NOT DESIGNATED FOR PUBLICATION

No. 126,731

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
L.S.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Shawnee District Court; PENNY R. MOYLAN, judge. Submitted without oral argument. Opinion filed September 27, 2024. Affirmed.

*Rebekah A. Phelps-Davis*, of Phelps-Chartered, of Topeka, for appellant natural mother.

*Morgan L. Hall*, senior deputy district attorney, and *Michael F. Kagay*, district attorney, for appellee.

Before WARNER, P.J., HILL and COBLE, JJ.

PER CURIAM: Mother appeals the termination of her parental rights to her son, L.S. She disputes each of the district court's findings of unfitness and best interests' determination, citing her own testimony at the termination hearing. But, Mother's testimony was directly contradicted by the agency workers, and the district court found Mother's testimony was not credible. Because we do not redetermine questions of credibility or reweigh the evidence, we affirm.

*The State agency for children became involved due to some bizarre phone calls.*

In May 2020, the Department for Children and Families received a report that Mother had called the FBI alleging she and L.S. were being trafficked by her parents. At

1

that time, Mother and L.S. were living with Grandfather, and L.S. was not quite two years old. Officers did not substantiate the allegation. Rather, Grandmother informed them that Mother had a history of mental illness and substance abuse, that two children had been removed from her care previously, and that Mother had been offered services at Valeo in the past.

A few days later, Grandmother reported she was worried about L.S.'s safety because Mother took L.S. and left Grandfather's house. The next day, Mother called Adult Protective Services advising them she was homeless and living in her car. She asked for assistance because she did not have anywhere to go. L.S. was hungry; he had not eaten all day. Mother told them Father was drugging and trafficking her. She believed Grandfather was involved. She said she had PTSD from an abusive relationship with Father.

Mother had a history with DCF beginning in 2011. She had prior convictions for possession of an opiate and domestic battery. In 2019, Mother filed a protection from abuse case against Father alleging he was physically violent toward her and L.S. Grandmother obtained a protection from stalking order against Father after alleging Father was extremely violent and had attempted to kill Mother several times.

After a period of hearings, orders, and revisions of orders concerning L.S., the State sought termination of Mother's parental rights.

On April 12, 2023, the district court terminated Mother's parental rights. The court found clear and convincing evidence that Mother was unfit due to:

- her mental health issues under K.S.A. 38-2269(b)(1);
- her continued use of methamphetamine under K.S.A. 38-2269(b)(3);

- her failure to avail herself of services offered by DCF under K.S.A. 38-2269(b)(7);

- her failure to provide proof of income, housing, and a PFA against Father under K.S.A. 38-2269(b)(8);

- her failure to maintain consistent visitation with L.S. under K.S.A. 38-2269(b)(9) and (c)(2); and

- her failure to carry out the reintegration plan under K.S.A. 38-2269(b)(9) and (c)(3).

The court found Mother's testimony that she was receiving treatment was not credible.

The court found clear and convincing evidence established Mother's unfitness would not change in the foreseeable future because she had not addressed the underlying concerns that began this case almost three years ago. It found it was in the best interests of L.S. to terminate Mother's parental rights due to:

- the lack of consistent contact,
- the length of time L.S. had been in DCF custody,
- the need for permanency, and
- the unlikelihood of reintegration.

*The legal principles that guide us are well-established.*

When a child has been found to be a child in need of care, the district court may terminate parental rights when the court finds "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). That statute lists nonexclusive factors the district court shall

consider in determining unfitness. K.S.A. 38-2269(b). When engaged in this task, a court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 38-2269(c). Any one of the factors in K.S.A. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

The concept of "foreseeable future" is examined from the child's perspective because children and adults have different perceptions of time. A month or a year seems considerably longer for a child than it would for an adult. Children have a right to permanency within a time frame reasonable to them. *In re M.S.*, 56 Kan. App. 2d 1247, 1263-64, 447 P.3d 994 (2019); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). And courts may look to the parent's past conduct as an indicator of future behavior. *In re M.S.*, 56 Kan. App. 2d at 1264.

After reviewing all the evidence in the light most favorable to the prevailing party, we must be convinced the district court's fact-findings are highly probable—supported by clear and convincing evidence. Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights . . . is in the best interests of the child." K.S.A. 38-2269(g)(1). In making such a decision, the district court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 38-2269(g)(1).

While the district court's unfitness finding must be supported by clear and convincing evidence, the best-interests determination is made on a preponderance of the evidence. "This is because the analysis of a parent's unfitness determines the constitutional question of whether a parent's rights *can* be terminated, and the analysis of

4

the child's best interests determines whether a parent's rights *should* be terminated." *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021). The appellate courts review the best-interests determination for abuse of discretion because the district court is in a better position to view the complexities of the situation. A district court abuses its discretion if no reasonable person would agree with the court or if the court made a factual or legal error. 61 Kan. App. 2d at 330.

In this appeal Mother disputes every finding of unfitness as well as the court's termination of her custody.

*We review the district court's work.*

We begin our analysis with this observation: L.S. was taken into custody when he was less than two years old. At the time of the termination hearing, he had spent two-and-a-half years in Rebekah Halloran's care. In other words, he had spent most of his life with a volunteer who helps victims of exploitation, domestic abuse, and human trafficking, not his mother.

*Mental health*

The district court found clear and convincing evidence Mother was unfit due to her mental health issues, including but not limited to her admitted depression, PTSD, and ADHD, under K.S.A. 38-2269(b)(1). Her erratic behavior and statements also indicated she suffered from serious mental health issues. She failed to provide documentation of her mental health assessment or her current treatment. The district court found Mother's own statements that she was receiving treatment and medication management were not credible because of her conflicting testimony at the hearing, her assurances she had documentation of a current lease when she did not, and her denial of Father's abuse. The court found Mother's mental illness directly impacted her ability to care for L.S.

Mother contends there was not clear and convincing evidence presented that she had a mental illness that rendered her unable to care for L.S. She cites her testimony that she had done the mental health assessment and was receiving therapy and medication management. She also cites court reports revealing that when she interacted with L.S., she did so appropriately.

The district court found Mother's testimony that she was receiving treatment was not credible. The court gave several reasons supported by the record for its finding. We do not redetermine questions of credibility. *In re Adoption of Baby Girl G.*, 311 Kan. at 806. There was ample evidence that Mother's mental health rendered her unable to care for L.S. Mother's mental stability was a driving force behind L.S. being taken into DCF custody. At the hearing, Mother testified she was awaiting disability income due to her ADHD, PTSD, and chronic depression. Halloran testified that L.S. needed stability; he gets anxious when he senses anxiety from someone. Mother falsely equates her stability during a limited visitation with stability to care for the ongoing needs of the child. Halloran testified that L.S. could not sleep next to a window because when L.S. was in Mother's care, Mother would let Father and his friends in through her window at night. But at the hearing, Mother would not acknowledge that Father was violent and abusive. Halloran testified Mother was exhibiting the same erratic behavior as she had seen before.

*Drug use*

The district court found clear and convincing evidence Mother was unfit due to her continued use of methamphetamine under K.S.A. 38-2269(b)(3). She failed to submit UAs and hair follicles for most of the case. Her one documented hair test from February 2021 showed chronic and severe methamphetamine use.

6

Mother contends that every UA she submitted was negative. She also contends that once the case plan goal changed to adoption, KVC did not have her submit any more UAs. Therefore, she argues, the court did not have knowledge of whether Mother was using drugs at the time of trial. She cites her testimony that she submitted a clean hair follicle test.

Drug usage can be implied by a parent's ongoing refusal to complete drug testing. *In re P.L.*, No. 120,220, 2019 2063874, at *3 (Kan. App. 2019) (unpublished opinion). The State provided evidence that Mother completed only one hair follicle test, which was positive for methamphetamine. She failed to complete all other court-ordered hair tests. Mother did complete 17 negative UAs between July and December 2021, but she had over 30 no shows during that time frame. As a result, she was dropped from the UA color code system at the end of 2021 due to no shows. Mother did not complete any UAs in 2022. She did begin drug treatment but was unsuccessfully discharged due to inconsistent attendance.

The court may look to Mother's past conduct as an indicator of future behavior. See *In re M.S.*, 56 Kan. App. 2d at 1264. Mother had a history of drug use. She had a 2010 conviction for drug possession. In 2013, Mother had a daughter born positive for amphetamines. In 2016, Mother was using methamphetamine and heroin while pregnant with another child. In 2020, Grandmother reported Mother was using methamphetamine. In 2021, the level of methamphetamine in Mother's hair follicles revealed chronic use. There was clear and convincing evidence to support the district court's finding of unfitness under K.S.A. 38-2269(b)(3).

*Reasonable efforts by the agencies to rehabilitate the family*

The district court found clear and convincing evidence Mother was unfit due to her failure to complete case plan tasks and avail herself of services offered by DCF or to provide verification of such services under K.S.A. 38-2269(b)(7).

Mother contends that after a change of her case manager, the agency's efforts were less than reasonable. KVC never conducted another walkthrough of Mother's home even though, Mother testified, she lived at the same place throughout this case. Mother contends very few services were offered to her. She cites her testimony that she had completed drug treatment, was receiving mental health treatment, had signed the releases KVC asked for, tried to contact KVC many times, had three walkthroughs scheduled for her home that KVC cancelled, and provided KVC the information to show the case plan tasks she had completed.

The testimony of the State's witnesses was very different than Mother's testimony. We do not reweigh the evidence. See *In re Adoption of Baby Girl G.*, 311 Kan. at 806. The statute requires *reasonable* not *effective* efforts by the agency to rehabilitate the family. The reasonable efforts requirement provides the parent an opportunity to succeed, but the parent must exert some effort. *In re M.S.*, 56 Kan. App. 2d at 1257.

One witness testified Mother had several housing situations during the pendency of this case. The witness also testified that Mother was unsuccessfully discharged from drug treatment, Mother never provided verification that she had completed a mental health assessment or that she was engaged in mental health services, Mother had not provided proof of legal income, Mother had not provided proof she completed a parenting class, and Mother had not maintained consistent visitation with L.S. Mother changed phone numbers many times and had gone long periods of time without contact. Another witness testified she attempted to contact Mother every month by mailing letters

8

to Mother's updated address, but they came back return to sender. Additionally, the lease Mother presented at trial was no longer valid, and Mother's phone numbers were disconnected. There was clear and convincing evidence to support the district court's finding of unfitness under K.S.A. 38-2269(b)(7).

*Lack of effort by Mother*

The district court found clear and convincing evidence Mother was unfit due to her failure to complete drug treatment and mental health treatment, failure to provide proof of income or stable housing, and failure to maintain a PFA against Father under K.S.A. 38-2269(b)(8). The court also found Mother's testimony that she had completed drug treatment and mental health treatment not credible.

Mother again cites her own testimony that she had lived at the same house for two years, had applied for disability, did odd jobs, completed drug treatment, was receiving mental health care, had signed releases, had completed hair follicle tests and UAs, had tried to contact KVC, and provided to KVC proof she had completed case plan tasks.

As stated above, Mother's testimony was contradicted by the State's witnesses. We do not reweigh the evidence or redetermine questions of credibility. See *In re Adoption of Baby Girl G.*, 311 Kan. at 806.

*Failure to maintain consistent visitation*

The district court found clear and convincing evidence Mother was unfit due to her failure to maintain consistent visitation with L.S. under K.S.A. 38-2269(b)(9) and (c)(2). Mother's only consistent visitation with L.S. occurred during Fall 2021.

Mother contends the district court ignored her testimony that she attempted to contact KVC to see L.S., but they would not take her calls or were not available when she went there.

The hearing took place in January 2023. L.S. had been in DCF custody since May 2020. DCF employees testified Mother's visitation with L.S. had been sporadic. She changed phone numbers many times and they could not reach her. Mother sometimes showed up when L.S. was visiting Grandfather. Mother never moved passed supervised visits because of her mental health and drug usage. Halloran testified Mother's last visit with L.S. was August 2022. Mother did not reach out to Halloran to see how L.S. was doing or to get pictures of him. There was clear and convincing evidence to support the district court's finding of unfitness under K.S.A. 38-2269(b)(9) and (c)(2).

*Failure to carry out the reintegration plan*

The district court found clear and convincing evidence Mother was unfit due to her failure to carry out the reintegration plan under K.S.A. 38-2269(b)(9) and (c)(3).

Mother contends she testified in detail about all she had done to fulfill the case plan tasks.

Mother's testimony was contradicted at trial. As stated above, she did not provide proof to KVC of stable housing or a legal source of income, she did not maintain monthly contact with KVC and notify KVC of changes to contact information within 24 hours, she did not complete drug treatment, she did not provide proof that she was receiving mental health care, she did not complete court ordered hair tests, she was dropped from the UA color code program, and she did not provide proof that she had completed a parenting class.

10

*Foreseeable future*

The district court found clear and convincing evidence established Mother's unfitness would not change in the foreseeable future because she had not addressed the underlying concerns that started this case almost three years ago. Mother had not shown how additional time would change her conduct in the foreseeable future. The length of time and Mother's failure to accomplish most of the case plan tasks established that Mother's conduct would not change in the foreseeable future.

We view the foreseeable future from the child's perspective. Children have a right to permanency within a time frame reasonable to them. *In re M.S.*, 56 Kan. App. 2d at 1263-64. Mother's failure to address most of her case plan tasks, failure to address her mental health and drug use, failure to maintain consistent visitation with her son, and failure to acknowledge her shortcomings establish clear and convincing evidence that her unfitness was unlikely to change in the foreseeable future.

*Best interests of the child*

In making its best interests' determination, "'the court must consider the nature and strength of the relationships between children and parent and the trauma that may be caused to the children by termination, weighing these considerations against a further delay in permanency for the children.'" [Citation omitted.] *In re. T.H.*, 60 Kan. App. 2d 536, 556, 494 P.3d 851 (2021).

The district court found it was in the best interests of L.S. to terminate Mother's parental rights due to the lack of consistent contact, the length of time L.S. had been in DCF custody, his young age, the need for permanency, and the unlikelihood of reintegration. When L.S. came into DCF custody, he suffered severe behaviors such as fear of windows. He was thriving in his placement, who was an adoptive resource. The

11

court found no evidence that terminating parental rights would result in emotional trauma to L.S.

Mother contends that her lack of visitation with L.S. was because KVC would not work with her. When she did see L.S., she was always attentive and interacted appropriately. She and L.S. had a bond. It was not in L.S.'s interest to separate him from Mother at such a young age.

A reasonable person could agree with the district court's conclusion set out in its well written memorandum. We agree that it was in the best interests of L.S. to terminate Mother's parental rights. L.S. needed stability, and it was unlikely that Mother could provide such stability. When L.S. was taken into DCF custody, L.S. was terrified of windows because Mother would let Father and his friends in her window at night. L.S. put his hands around a girl's neck because he had seen Father do the same to Mother. At the hearing, Mother refused to acknowledge that Father was abusive.

In the time that L.S. has been in custody, Mother has failed to demonstrate stability or show that she had dealt with her drug use and mental health issues. Mother was showing the same erratic behavior as before. She was only having sporadic supervised visits with L.S. Mother was not reaching out to Halloran and asking how L.S. was doing or even asking for pictures. Yet, L.S. was thriving due to the efforts of Halloran and others and not due to Mother.

Affirmed.