NOT DESIGNATED FOR PUBLICATION

Nos. 123,765
123,766

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of J.S. and A.H.,
Minor Children.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed January 28, 2022. Affirmed.

*Sue Folsom DeVoe*, of DeVoe Law LLC, of Osage City, for appellant natural father.

*Kimberly Robinson*, assistant county attorney, for appellee.

Before CLINE, P.J., GREEN, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Father appeals the termination of his parental rights, claiming insufficient evidence supported the district court's finding that his unfitness was unlikely to change in the foreseeable future. We find sufficient evidence supported the court's finding and affirm the district court's termination decision.

FACTS

The State initiated child in need of care (CINC) proceedings for Father's two children, J.S. and A.H., after two-year-old J.S. was found wandering the parking lot of an apartment complex without supervision on March 7, 2019. C.B., who identified herself as the children's aunt, told investigating officers that she babysat both J.S. and 10-month-old A.H. regularly. C.B. admitted both children had been in the living room unsupervised.

1

She later noticed J.S. was missing and began looking for him. In total, J.S. was missing for about 30 minutes outside in 32-degree weather.

The officers placed J.S. into police protective custody. Upon entry into C.B.'s apartment to gather J.S.'s belongings, an officer smelled burnt marijuana and observed Gain laundry detergent tablets scattered on the living room floor where the children were left unattended. At that point, the officers placed A.H. in police protective custody as well. Both parents were in custody at the Franklin County Adult Detention Center at the time.

The district court placed both children in the temporary custody of the Department for Children and Families (DCF). The court ordered that before either parent could have visitation with the children, that parent must have two clean urinalyses (UAs).

The district court held an initial case planning conference where it established permanency plans for both J.S. and A.H. Father participated by telephone. To achieve reintegration with his children, the plans required Father to: (1) obtain and maintain safe, clean, and stable housing and comply with random walkthroughs of the home; (2) obtain and maintain legal transportation; (3) obtain and maintain legal employment; (4) sign all necessary releases; (5) inform his case manager of any legal issues and follow all rules of probation; (6) provide random drug screens; (7) complete a mental health intake and follow all recommendations; and (8) complete budgets to determine whether his income can meet the needs of the children. A month later Father stipulated to the State's CINC petition, and the district court adjudicated both J.S. and A.H. to be children in need of care. The court reaffirmed the permanency plan, required to achieve reintegration.

More than a year passed, and the only case plan task Father completed was signing the necessary releases. During that time, Father had no visitation with his children because he never provided two clean UAs. In fact, he only provided one UA (on

2

August 15, 2019, which was negative) and was a "no show" for the next seven. He also did not consistently communicate with his case managers, often failing to return their phone calls and text messages. And he was arrested on December 25, 2019, for probation violations and possession of methamphetamine and drug paraphernalia.

The State moved to terminate Father's parental rights to both children on June 19, 2020. In its filings, the State noted that it intended to ask the district court to take judicial notice of certain cases pursuant to K.S.A. 60-409(c), including: (1) "[case number] 2019-CR-103: father's criminal conviction for possession of methamphetamine, counterfeiting currency, and theft, which is currently pending with a second motion to revoke on 7.16.2020"; (2) "[case number] 2019-CR-131: father's criminal conviction for burglary, which is currently pending with a second motion to revoke on 7.16.2020"; (3) "[case number] 2019-CR-586: father's criminal case for possession of methamphetamine and possession of paraphernalia, which is pending with [a] hearing on 7.8.2020"; (4) "[case number] 2020-CR-162: father's criminal case for burglary and theft, which is pending with a hearing on 6.24.2020"; and (5) "[case number] 2020-CR-163: father's criminal case for possession of methamphetamine, which is pending with a hearing on 6.24.2020."

The district court held an evidentiary hearing by Zoom on the termination of Father's parental rights to both children on August 11, 2020. Father was in custody but consulted with his counsel in a Zoom "breakout room."

The State presented testimony from two witnesses, Wendy Dodd and Teri Drake-Caruthers. Dodd supervised the KVC case team that provided services to the family. Drake-Caruthers was the permanency supervisor assigned to the case when TFI took over for KVC in October 2019. Both witnesses described the respective agency efforts to assist the family, Father's case plan tasks, and his failure to complete those tasks and communicate with his case workers.

3

Additionally, Drake-Caruthers testified to the importance of the random drug tests. She explained TFI needed UAs from Father to assess concerns about drug use and provide him services. She said Father failure to submit to UAs was concerning because he was arrested for possession of methamphetamine. Father's counsel interjected, noting, "There's a difference between a charge and a conviction." She then asked that Drake-Caruthers clarify whether Father had been charged or convicted. The district court pointed out that it could take judicial notice of the criminal filings in Franklin County. The court said Father had "two different convictions" and "three pending felony matters," and noted it had Father's "convictions or his cases here on the computer." Father's counsel made no further comment, and the State continued its examination of Drake-Caruthers.

After the State rested, Father and his counsel privately consulted in a Zoom breakout room. When the proceedings resumed, Father's counsel informed the district court that Father did not want to testify and had no evidence to present. In closing, Father's counsel claimed the resources available were not "always given" to Father She said Father could not accomplish any case plan tasks while incarcerated, and he may not have had a telephone when he was free, which hindered his ability to obtain services and communicate with DCF. Father made no other arguments against termination.

Ultimately, the district court terminated Father's parental rights to both children, reasoning:

> "THE COURT: . . . [T]he problem the Court sees in [Father's] case is the fact of his continued involvement with methamphetamine.
> "I mean these children came into custody because they were basically w[a]ndering around in the neighborhood completely unsupervised and, uh, nobody— people didn't know who the children belonged to.
> "Ultimately once it was discovered who they belonged to, then of course, the evidence of the drug activity started to come to light.

"Now the problem for [Father] is he has a 30 month sentence hanging over his head in [case number] 19-CR-103. He's on his second motion to revoke. He's already served a three-day sanction. Now he's looking at potentially a larger sanction in [the Department of Corrections] if that case is run by itself but it's not.

"He also has [case number] 19-CR-131 where he has 27 months. That's the burglary case. Again in that case there's also a second motion to revoke probation. But beyond that he also has a possession of meth case in [case number] 19-CR-586; a burglary case which is newer in [case number] 20-CR-162; and the newest case of possession of methamphetamine in [case number] 20-CR-163.

"Uh, and obviously with his criminal history because of his first two convictions, if he's convicted on any of those cases, his sentence will be even more and they're mandatorily consecutive to his first cases. Which if you are required to do prison time he would be in prison for in excess of six years. I'm not saying that's what's going to happen. I don't know what's going to happen in his criminal cases.

"But, uh, and I understand that he has been in jail a lot of the time while he was—since the children have been taken into custody. But he did bond out and he was on probation at certain times. But during the times when he was free and not in the actual jail, he didn't have a job, didn't have a home, didn't have a vehicle.

"He was removed from treatment. Tested positive for use of drugs, methamphetamine and marijuana. And that was through his probation officer when they did take UAs. And the UAs that he was required to do in the child in need of care case he wouldn't take them. Didn't complete any mental health assessments that were required.

"[Father] hasn't done anything that was necessary for him to have the children potentially come back into his custody at some point in the future. There's been no progress on any of the case plan goals at all. And I have—the Court has no doubt that it's because of the fact of his continued involvement in the use of methamphetamine. Uh, which is going to have a bad result in these cases and potentially is going to have a really bad result in his criminal cases if he ends up going to prison. But the issue here is what should happen with these two children that have been in out-of-home placement for over a year.

"The Court doesn't really see any other options other than to terminate [Father's] rights to both children. There's been a use of narcotics or dangerous drugs to a degree that renders [Father] unable to care for the physical and mental or emotional needs of the children.

"He's obviously been convicted of a felony and now he has three new pending cases. . . .

"There's been a failure of reasonable efforts that were made by TFI in order to try to rehabilitate or reintegrate the child with his father.

"There's been a lack of effort on [Father's] part to adjust his own situation to meet the needs of the child.

"There's been a failure to maintain any type of regular visitation, contact or communication with the children.

"And as I indicated, there's been a failure to carry out the reasonable plan which is adopted by the Court for purposes of reintegration. There's just been no effort by the father to do anything in this particular case.

"In the Court's opinion based upon the history of the case, also because of the continued criminal problems [Father] is facing, that's not going to change in the foreseeable future.

"The Court's opinion is the parental rights of father should be terminated. The Court would further find that that it is in the best interest of the child that the parental rights of the father be terminated."

In its journal entry, the district court found by clear and convincing evidence that Father was presently unfit and his unfitness was unlikely to change in the foreseeable future based on K.S.A. 2020 Supp. 38-2269(b)(3), (b)(5), (b)(7), and (b)(8).

The district court relied on K.S.A. 2020 Supp. 38-2269(b)(3)—"the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child"—because of "Father's continued use of methamphetamine and testing positive for methamphetamine and marijuana while out of jail."

As to the district court's reliance on K.S.A. 2020 Supp. 38-2269(b)(5)—conviction of a felony and imprisonment—the court explained:

6

"Father is currently incarcerated. Court takes judicial notice of father's criminal cases. Father has a 2nd motion to revoke pending with a 30 months (FRCO 2019-CR-103) and another criminal case with a 27 month underlying sentence (FRCO 2019-CR-131). Father has possession of meth (FRCO 2020-CR-163), possession of meth (FRCO 2019-CR-586), and burglary (FRCO 2020-CR-162) cases all pending. Due to father's criminal history, he could be facing several years in prison. Father may have been incarcerated but he was released and on probation at times. During those times, he did not get a home, job, or test negative. He tested positive for methamphetamine and marijuana on probation. He also left treatment."

The district court relied on K.S.A. 2020 Supp. 38-2269(b)(7)—"failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family"—as well as K.S.A. 2020 Supp. 38-2269(b)(8)—"lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child"—because "Father did not complete any case plan tasks. Father failed to carry out a visitation plan or reintegration plan by the agency."

The district court also found that termination of Father's parental rights would be in the best interests of the children.

On appeal, Father challenges the sufficiency of the evidence supporting the district court's finding that his unfitness was unlikely to change in the foreseeable future. He claims the district court improperly relied on Franklin County District Court computer records of his prior criminal convictions and pending criminal charges, since the State did not admit those records into evidence or make them available to his counsel. He does not challenge the court's finding of present unfitness or its finding that termination is in the best interests of the children.

ANALYSIS

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Deemed a fundamental right, a court may terminate the legal bond between a parent and a child only upon clear and convincing proof of parental unfitness. See K.S.A. 2020 Supp. 38-2269(a); *In re M.S.*, 56 Kan. App. 2d 1247, 1255, 447 P.3d 994 (2019).

Under K.S.A. 2020 Supp. 38-2269(a), after a child has been adjudicated as a child in need of care, a district court may terminate parental rights to the child when the court finds by clear and convincing evidence that (1) "the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for [the] child," and (2) "the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2020 Supp. 38-2269(a). Section (b) of that statute lists nine nonexclusive factors that, if applicable, the court is to consider in determining parental unfitness. See K.S.A. 2020 Supp. 38-2269(b). Section (c) lists four additional nonexclusive factors for the court to consider when the child is not in the parent's physical custody. See K.S.A. 2020 Supp. 38-2269(c). The existence of any one of the factors in section (b) or (c) "standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 2020 Supp. 38-2269(f).

Father argues it was improper for the district court to rely on his criminal records at the termination hearing because the State did not introduce the records into evidence or share copies of the records with either him or his counsel. The State argues the district court could take judicial notice of its own records, and Father had notice and ample opportunity to review the records in the months between the filing of the State's motions to terminate (which referenced every case the district court judicially noticed at the termination hearing) and the hearing. We find this dispute immaterial because the district

8

court relied on several statutory bases to support its finding of future unfitness, some of which do not relate to Father's criminal history and pending criminal cases. So long as we find clear and convincing evidence supports termination under one of these other bases, we must affirm the district court's termination. *In re E.L.*, 61 Kan. App. 311, 323-24, __P.3d __, 2021 WL 5500042, at *8 (No. 123,707, filed November 24, 2021).

The district court found that Father's unfitness under the following statutory bases was unlikely to change in the foreseeable future: (1) his use of dangerous drugs of such duration or nature that rendered him unable to care for the physical, mental, or emotional needs of the children; (2) his conviction of a felony and his imprisonment; (3) the failure of reasonable efforts by the appropriate agencies to rehabilitate his family; and (4) his lack of effort to adjust his circumstances, conduct, or conditions to meet the children's needs. See K.S.A. 2020 Supp. 38-2269(b)(3), (b)(5), (b)(7), (b)(8). Setting aside the first two statutory bases (which each relate to Father's criminal history and pending criminal charges), we find clear and convincing evidence supports termination under either of the last two statutory bases.

Both Dodd and Drake-Caruthers testified about KVC's and TFI's efforts to try to rehabilitate the family. Both testified about KVC and TFI's attempts to communicate with Father, even visiting him in jail once they learned he had been arrested. The case workers from KVC and TFI told Father about available community health services, including how to get his mental health intake. They provided him with phone numbers for subsidized housing and the phone number for the UA line so he would know when to provide UAs. TFI also told him about TFI's policy of assisting parents with the cost of the mental health intake and the initial sessions if he needed assistance. Yet, Father did not complete any of the assigned tasks throughout the case—even during the time periods when he was not in jail.

The only argument Father makes about the district court's findings under K.S.A. 38-2269(b)(7) or (b)(8) is his assertion that the State did not introduce the case plans or any of the status reports filed in the case by KVC or TFI into evidence at the hearing. Still, he cites no authority requiring the State to do so. Another panel of this court addressing the sufficiency of the evidence in a termination of parental rights case has held direct evidence of facts is not required, clarifying that "[a]ny material fact may be proven not only by direct testimony, but also by indirect or circumstantial evidence, or by a combination of both." *In re M.S.*, 56 Kan. App. 2d at 1258. Here, both Dodd and Drake-Caruthers testified to the specific case plan tasks assigned to Father, KVC's and TFI's efforts to rehabilitate the family, and Father's lack of compliance with the case plans.

After reviewing all the evidence in the light most favorable to the State (as the prevailing party), we are convinced that a rational fact-finder could have found the district court's determination of future unfitness under either K.S.A. 2020 Supp. 38-2269(b)(7) or (b)(8) to be "highly probable, *i.e.*, by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705-06; *In re E.L.*, 61 Kan. App. at 322. Father's past conduct provides a sufficient basis for the district court to determine him unfit for the foreseeable future, particularly when considering the foreseeable future in "'child time'" as we are required to do. See 61 Kan. App. at 328. J.S. and A.H. were both taken into custody when they were young (2 years old and 10 months old). The evidence also shows the children lacked a relationship with Father, since he never visited either child throughout the case. These two factors are particularly significant when determining a parent's future unfitness. See 61 Kan. App. at 329; *In re M.S.*, 56 Kan. App. 2d at 1264.

We find clear and convincing evidence supported the district court's finding that Father's unfitness was unlikely to change in the foreseeable future, and he has waived any objection to the court's findings of present unfitness and that termination is in the best interests of the children. See *In re K.L.B.*, 56 Kan. App. 2d 429, 448, 431 P.3d 883 (2018)

10

(finding parent's failure to challenge district court's finding from termination hearing waived and abandoned any argument on the issue).

Affirmed.