NOT DESIGNATED FOR PUBLICATION

No. 124,640

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.M.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY D. KEITH, judge. Opinion filed July 1, 2022. Affirmed.

*Jordan E. Kieffer*, of Jordan Kieffer, P.A., of Bel Aire, for appellant natural father.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., WARNER and CLINE, JJ.

PER CURIAM: After finding that Father was an unfit parent, the district court terminated his parental rights to A.M. Father appeals that decision, arguing there was insufficient evidence to show he was an unfit parent as defined by the statute, he would remain unfit for the foreseeable future, or termination was in A.M.'s best interests. After reviewing the record, we affirm the district court.

FACTUAL AND PROCEDURAL HISTORY

In October 2019, A.M., a substance exposed newborn, was placed in protective custody. At the time of delivery, Mother tested positive for methamphetamine. In a petition to have A.M. adjudicated a child in need of care, the State also alleged that there

1

were concerns of domestic violence between Mother and Father and that their home was unclean.

At the time of A.M.'s birth, Father was unemployed and on probation for a forgery charge. He had a lengthy history of law enforcement contact, including several substance abuse charges, various thefts, and domestic abuse. He relied on others to meet his basic needs such as housing and transportation.

In February 2020, upon Father's statement of no contest to the child in need of care petition, the district court found that there was clear and convincing evidence that A.M. was a child in need of care, adjudicated A.M. as such, and approved a proposed permanency plan to work on reintegrating A.M. with her parents. To reintegrate with A.M., Father needed to abstain from the use of illegal drugs and alcohol, participate in random drug testing, obtain employment, obtain and maintain appropriate housing, and participate in certain assessments and programs such as substance abuse evaluations and parenting classes.

A month later, St. Francis Ministries (SFM), the social services group working on the case, noted that Father had not yet completed his clinical interview and assessment. According to the report, Father was being removed from his residence at the maternal grandmother's home as a protection from abuse order had been served against him. As of early March 2020, Father reported that he lived with a friend and was working on getting housing of his own. He also reported that he had begun drug treatment but had not signed a release of information. He also stated that he was close to completing a parenting class and planned to take a budget and nutrition class as well. He had obtained employment but lost it after a week because he missed work because he was sick. According to Father, his most recent drug test would be positive because he used drugs after losing his job.

By the time SFM completed its report for a May 2020 hearing—three months after the initial finding that A.M. was a child in need of care, Father had still not completed his mental health assessment. But he indicated he would be doing so soon. Father had completed his parenting class but had not signed up for more classes. He remained unemployed and was waiting to hear back from a grocery store about a job.

Father, throughout the course of the case, failed to maintain his sobriety as evidenced by several drug tests that he either missed or failed.

Due to his failure to complete any task plans, in September 2020, seven months after A.M. was adjudicated a child in need of care, Father was informed that the new goal of the case would be adoption. SFM noted in its report to the court that Father had been inconsistent in contacting his case workers to discuss the case. According to the report, Father had not had consistent contact with SFM since October 2019. It appeared that Father did not have a working phone and did not inform SFM of that fact. SFM noted that it could not send Father letters because he lacked stable housing.

Father had not provided SFM with information on whether he had completed any additional classes. Nor had Father provided SFM with proof of employment. Father had not been consistent with visitations as well because he had a warrant that needed to be taken care of first. He had also not reported to his probation officer as directed.

In early February 2021, 15 months after A.M.'s birth, Father told SFM that he had a job, would check himself into treatment, and would turn himself in and bond out, complete his anger management class, and reenroll in his budget and nutrition classes. But instead, he continued to either miss or fail his drug tests and in mid-February 2021, Father was incarcerated on charges of probation violation, attempted first-degree murder, aggravated battery, criminal threat, aggravated assault, aggravated kidnapping, failure to comply, and theft.

In March 2021, the State moved for a finding of unfitness and termination of Father's parental rights.

At the June 2021 termination hearing, Father confirmed that he was currently incarcerated at the county jail and had been there since mid-February 2021. According to Father, he had the means to provide for A.M. while he was in custody, but no one had contacted him to ask for anything, so he had not provided any financial support. He did note that the paternal grandmother had his power of attorney and could spend his money for things A.M. needed when A.M. visited her. But Father also stated that he had $7,800, he planned to hire his own attorney for $10,000 rather than use a court-appointed attorney, and that his bond was set at $475,000—an amount he was not able to pay. He claimed his new attorney would get his bond reduced to an amount he could afford, but it was unclear what that amount would be and even when it would happen.

According to Father, the only thing he had left to complete on his case plan tasks was to finish an anger management class. But he acknowledged that before he was incarcerated, he was using methamphetamines and marijuana on a weekly basis, and he had never completed treatment. Father claimed that he had a bed available in a treatment facility if he could make his bond, which was "outrageously high." Although he further revealed that he did not have a reserved spot—just that the place he was considering always had openings.

Father explained that he had visitation with A.M. for the first half of the case, but his visits were eventually suspended because the court believed he had an active warrant. But when Father tried to take care of the active warrant, he was told there was no warrant on file. Father said that he had seen someone from SFM once while he was incarcerated. At that visit, SFM told him they would visit once a month, but he had not seen anyone from SFM since that visit.

4

But according to Jackie Del Real, a permanency specialist with SFM, Father failed to provide proof that he had completed some of his ordered classes; that, before his most recent incarceration, Father failed to obtain stable housing; was inconsistent with contacting SFM; and never provided proof of stable employment. Del Real also testified that Father often failed to comply with ordered drug tests and when he did comply, he tested positive.

Del Real made it clear that once Father was released from jail, he would still have several case plan goals that he would need to complete. Del Real explained that she did not think it would be in A.M.'s best interests to wait for Father to complete those goals given how long the case had taken. For example, Deal Real explained that she would want to see at least six months sobriety from Father before considering reintegration.

Amanda Galloway, a reintegration supervisor with SFM, also recommended Father's parental rights be terminated and A.M. achieve permanency through adoption. Galloway noted that A.M. had been in foster care her entire life and had made bonds with her placement family instead of Father. Galloway did not believe that Father had shown that he had made any substantial changes in his life since the case started. As Galloway put it, he continued to use drugs, did not complete required assessments, and was currently incarcerated. Galloway reiterated that Father would need to show that he could maintain sobriety for at least six months after being released from jail before she would consider reintegration a potential option. And at least six months after Father was released was, in Galloway's opinion, too long for A.M. to have to wait for permanency in her life.

Father testified again on the second day of the hearing, held in late July 2021. Despite attempting to make his bond, Father remained incarcerated on his new charges and anticipated he would be for up to 60 more days. While in custody he had also been charged with a new crime for having a relationship with an underage girl. Father also

5

acknowledged that while he was in custody, he could not be a parent for A.M. in several respects. He indicated that if and when he bonded out, he would go into inpatient substance abuse treatment for some period of time and then to a sober living house.

After considering the evidence, the district court granted the State's motion to terminate Father's parental rights. In doing so, the court found clear and convincing evidence that Father was an unfit parent because of:

1. His use of intoxicating liquors or narcotics or dangerous drugs that rendered him unable to care for A.M. K.S.A. 2020 Supp. 38-2269(b)(3). The district court noted that Father had not been able to maintain his sobriety.
2. The failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family. K.S.A. 2020 Supp. 38-2269(b)(7). The district court noted the failure of Father to complete case plans.
3. A lack of effort on Father's part to adjust his circumstances, conduct, or conditions to meet the needs of A.M. K.S.A. 2020 Supp. 38-2269(b)(8). The district court noted Father's failure to establish employment and stable housing, along with continued drug use.
4. A failure to maintain regular visitation, contact, or communication with the child. K.S.A. 2020 Supp. 38-2269(c)(2). The district court noted that Father had not taken proper action to make sure warrants were served or canceled so he could see A.M.
5. A failure to carry out a reasonable plan approved by the court directed toward integrating A.M. into a parental home. K.S.A. 2020 Supp. 38-2269(c)(3).

The district court found that terminating Father's parental rights was in the best interests of A.M. under K.S.A. 2020 Supp. 38-2269(g)(1).

Father timely appealed.

6

ANALYSIS

On appeal, Father argues that there was not sufficient evidence to support the district court's decision to find him an unfit parent and that termination of his parental rights was not in A.M.'s best interests.

A parent has a constitutionally recognized fundamental right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014).

A district court may terminate parental rights only after a child has been found to be a child in need of care and the court finds by clear and convincing evidence that

- the parent is unfit and unable to care properly for a child;
- the conduct or condition that renders the parent unfit is unlikely to change in the foreseeable future; and
- by a preponderance of evidence, it is in the best interests of the child to terminate parental rights. See K.S.A. 2020 Supp. 38-2269(a) and (g)(1).

K.S.A. 2020 Supp. 38-2269(b) provides a list of nine nonexclusive factors the district court may rely on to determine if a parent is unfit. Any one of those factors alone may be grounds to terminate parental rights. K.S.A. 2020 Supp. 38-2269(f).

"When we review a finding of parental unfitness, this court must determine, after reviewing all the evidence in a light most favorable to the State, whether a rational fact-finder could have found the ultimate determination to be highly probable, i.e., by clear

7

and convincing evidence." *In re T.H.*, 60 Kan. App. 2d 536, 547, 494 P.3d 851, *rev. denied* 314 Kan. 855 (2021). When making this determination, this court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705. Any single factor of unfitness can be a sufficient basis for a district court's determination that a parent is unfit. K.S.A. 2020 Supp. 38-2269(f).

*Clear and convincing evidence supports the district court's finding that Father was unfit and his condition was unlikely to change in the foreseeable future.*

On appeal, Father argues there was not clear and convincing evidence to support the district court's decision that he would remain unfit for the foreseeable future. Father does not appear to challenge the finding of current unfitness. In fact, he agreed at the termination hearing that he had not maintained his sobriety—using marijuana daily and methamphetamine weekly throughout this case—and had not completed treatment. He also agreed that he failed to cooperate with his caseworker and had not seen his daughter in a year. And finally, it was not disputed that he was and had been incarcerated for four months at the time of the hearing being held on a $475,000 bond. These undisputed facts were sufficient to support the district court's finding of unfitness.

When determining whether a parent's conduct is likely to change in the foreseeable future, the court considers the foreseeable future from the child's perspective because children experience time differently than adults. K.S.A. 2020 Supp. 38-2201(b)(4); *In re R.S.*, 50 Kan. App. 2d at 1117.

Father points to his testimony that indicated that he had made some progress on his case plan and that he had a desire and a plan to keep progressing once he was released from custody. But after reviewing the testimony, we find that the district court did not err.

This case began in October 2019, when A.M. was born. From that time to the termination hearing, clear and convincing evidence established that Father did not make any substantial progress in addressing the issues the district court relied on to find him an unfit parent. Father consistently tested positive for drugs or missed his drug tests. Father failed to provide proof of employment. He failed to obtain stable housing. In his appeal, Father fails to point to anything showing that he had made substantial changes and would continue to do so once released from incarceration.

Father also failed to keep in contact with A.M. The district court ordered that he take care of an outstanding warrant before resuming visitation. According to Father he tried to do so but no one could find an outstanding warrant. It seems, Father left it at that. There was no testimony that he tried to speak with the judge about the phantom warrant. Instead, Father, as he put it, "stubbornly kind of started bucking [SFM] at that point."

Courts can consider a parent's past conduct as evidence regarding the reasonable likelihood of any future change in parental fitness. *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019). Here, when viewing the evidence in a light most favorable to the State, the record shows that Father made little to no significant progress on his case plan both before and after he was incarcerated. And, as Galloway testified, Father would need to be released from prison and maintain sobriety for at least six months before she would consider reintegration an option. Plus, Father would still need to meet his other case plan goals. In other words, the time needed to ensure that he would be able to continue his sobriety into the foreseeable future was longer than would be reasonable given the time A.M. has been in out-of-home placement and her need for current permanence and stability.

*The district court did not abuse its discretion when it determined that termination was in A.M.'s best interests.*

Father also argues the district court erred when it determined that termination was in A.M.'s best interests.

The decision of whether a child's best interests would be served by terminating parental rights is a "'highly discretionary call.'" *In re R.S.*, 50 Kan. App. 2d at 1114. Thus, the "best-interests determination" is reviewed under this court's traditional abuse of discretion standard. 50 Kan. App. 2d at 1114.

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

At the time of the hearing, A.M. had spent her entire life in foster care. She had formed bonds with her placement family and had no contact with Father for about a year. Father had nearly two years to show that he was a fit parent for A.M. and could not do so. At the absolute best, SFM would begin to consider Father for reintegration six months after his release from custody—the date of which was unknown. Six months to a child as young as A.M. is a significant portion of her life. A.M. deserved permanency and that is something that Father could not provide.

Father fails to show that the district court's decision that A.M.'s best interests would be served by terminating Father's parental rights was based on an error of law, an error of fact, or that it was arbitrary, fanciful, or unreasonable. The district court did not abuse its discretion and its findings were based upon a preponderance of the evidence.

In sum, when viewing the evidence in a light most favorable to the State, there was clear and convincing evidence to support the district court's decision that Father was an unfit parent because of his use of drugs, the failure of the lack of reasonable efforts made by appropriate public or private agencies to rehabilitate the family, a lack of effort on father's part to adjust his circumstances, a failure to maintain regular visitation with A.M., and a failure to carry out a reasonable plan directed toward integration of A.M. into the parental home. There was clear and convincing evidence that the conduct or condition that rendered Father unfit was unlikely to change in the foreseeable future; and there was a preponderance of evidence, to support the district court's discretionary finding that it was in A.M.'s best interests to terminate her Father's parental rights.

Affirmed.