NOT DESIGNATED FOR PUBLICATION

No. 127,317

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.B., a Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MICHAEL HOELSCHER, judge. Submitted without oral argument. Opinion filed November 15, 2024. Affirmed.

*Grant A. Brazill*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellant natural father.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before SCHROEDER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: Father appeals the termination of his parental rights to his daughter, A.B. Father claims the district court's findings of his unfitness for the foreseeable future are not supported by clear and convincing evidence. Father also claims the termination of his parental rights was not in A.B.'s best interests. After thoroughly reviewing the record and the parties' briefs, we find no error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.B. was born in July 2022 and placed in the NICU. A few days later, the State filed a child in need of care petition. The petition alleged that Mother's parental rights to her other seven children and Father's parental rights to his two other children had been recently terminated; there was a history of domestic violence between Father and Mother; Father had pending charges for aggravated battery, aggravated assault, and violation of a

1

protective order; and both parents had a history of substance abuse. The district court placed A.B. in the protective custody of the Secretary of the Department for Children and Families. Saint Francis Ministries was assigned to monitor the case.

At the time of A.B.'s birth, Father was "on the run" because there were active warrants for his arrest. He had cut off his house arrest bracelet. Father was arrested and incarcerated in August 2022.

In November 2022, Father pled guilty to aggravated battery under case No. 20CR1468; aggravated assault and criminal threat under case No. 21CR775; and aggravated domestic battery under case No. 22CR1310. Mother was the victim in case Nos. 20CR1468 and 22CR1310. The complaints alleged that Father knowingly impeded the normal breathing or blood circulation of Mother by applying pressure to Mother's throat, neck, or chest and that Father repeatedly punched Mother in the face. Father was granted a downward dispositional departure to 24 months' probation with a total underlying prison sentence of 62 months.

Two days later, Father entered a no contest statement to the child in need of care petition. The district court found A.B. was a child in need of care.

Father's permanency plan tasks were to complete a clinical interview and assessment; abstain from illegal drugs, alcohol, and prescription drugs without a valid prescription; obtain and maintain employment; obtain and maintain appropriate housing; attend budgeting and nutrition classes; complete random urinalysis (UA) and hair follicle tests; and complete a substance abuse evaluation.

In February 2023, Father was released from jail. Thereafter, Father contacted Saint Francis Ministries about this case. A few days later, the district court held a permanency

hearing at which Father did not appear. The district court found reintegration was no longer a viable goal.

In March 2023, the State moved for findings of unfitness and termination of parental rights of both parents. The State alleged Father was unfit on these grounds:

- Failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family. K.S.A. 38-2269(b)(7).
- Lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child. K.S.A. 38-2269(b)(8).
- Failure to maintain regular visitation, contact or communication with the child or with the custodian of the child. K.S.A. 38-2269(c)(2).
- Failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home. K.S.A. 38-2269(c)(3).

In July 2023, the district court terminated Mother's parental rights but continued Father's hearing. In August 2023, Father was given an achievement plan to let him know what he needed to do to reintegrate with A.B. The achievement plan required him to comply with his UAs and hair follicle tests, attend all visitations, obtain and provide proof of employment, obtain appropriate housing and complete a walk-through, maintain appropriate communication with his case team, ask for a nonnarcotic medication, remain compliant with his probation, and complete his batterer's intervention class.

Father was incarcerated from September 2023 to October 2023 for probation violations—failing to attend the batterers' intervention class, failing to maintain full-time employment, and failing to report to his intensive supervision officer (ISO). The district court heard the motion to terminate Father's parental rights on October 30, 2023, about two weeks after his release from jail. At the time of the termination hearing, Father was residing at an adult residential correctional facility.

There was conflicting testimony about Father's use of opiates. Throughout the case, Father submitted several drug tests that were positive for opiates. The morning of the hearing, Father tested positive for OxyContin. Father testified he had a prescription for opiates for his ulcers. He testified someone at the residential facility administered the opiates to him and that he took hydrocodone or oxycodone in the past week. He testified he sent verification of his prescriptions to Saint Francis Ministries.

Claudia George, the ISO at the residential corrections facility, testified that Father did not have any prescribed medications administered by the facility. Father told her at intake that he was taking no medication. Residents are required to inform the facility of the medications they are taking and turn them over to the facility to administer. George testified Father's positive test for oxycodone violated his probation.

Mikayla Russell, the case manager with Saint Francis Ministries, testified that out of eight prescriptions Father had for opiates, she had received only three. She was concerned that he was getting prescriptions from several different providers, and she did not believe he could actively take care of A.B. while on the narcotics.

Father was asked about his criminal convictions. Father refused to take responsibility for choking or hitting Mother. He admitted he was arrested "more than a few" times for domestic violence incidents with Mother from 2019 to 2022.

The witnesses testified about Father's living situation. Father testified he moved into his own apartment in May 2023. Russell testified Father canceled the walk-through Saint Francis Ministries had scheduled for that apartment. Father testified he did not have the money to pay the rent to keep his apartment and he had not spoken to his landlord about keeping the apartment since he was incarcerated. According to George, the residential program was 120 days minimum, and A.B. would not be able to live with him at the residential facility.

Father testified about his recent employment. He had just started working part-time at Church's Chicken. Before that, he had three different jobs through temp agencies since February 2023.

The witnesses testified about Father's visits with A.B. While Father attended 13 visits with A.B. between February 23, 2023 and September 7, 2023, he canceled 16 visits. Father did not move past supervised visits because he was not showing up consistently, he did not bring supplies, he showed no bond with A.B., he did not know how to manage A.B., and he was not showing improvement.

The district court announced its ruling from the bench on November 20, 2023. Based on the evidence, the district court found Father was unfit and terminated his parental rights. The district court noted that Father appeared in custody for new probation violations on his three felony cases. The district court found Father's testimony about his opiates use was not credible. He was deceptive when he testified about his prescription being held by staff at the work release facility. The district court found Father's testimony that he had never hit or perpetrated any physical violence toward Mother was not credible. The district court considered Father's past conduct to be indicative of future behavior, deciding the case on actions, not intentions. The district court found Father had not shown an ability to maintain stable employment, maintain stable housing, refrain from or be forthcoming about the substances he was taking, or be consistent with his visitations with A.B. The district court found Father was unfit under the statutory factors cited in the State's motion and that his unfitness would not change in the foreseeable future. The district court found A.B. deserved resolution in child time and it was in A.B.'s best interests for Father's parental rights to be terminated. These findings were later incorporated into a written order. Father timely appealed the district court's judgment.

ANALYSIS

When a child has been adjudicated to be a child in need of care, the district court may terminate parental rights when the court finds "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a).

The statute lists nine nonexclusive factors the district court shall consider in determining unfitness. K.S.A. 38-2269(b). The district court must also consider a separate list of four nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 38-2269(c). Any one of the factors in K.S.A. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

The foreseeable future is examined from the child's perspective. Children and adults have different perceptions of time. A month or a year seems considerably longer for a child than it would for an adult. Children have a right to permanency within a time frame reasonable to them. *In re M.S.*, 56 Kan. App. 2d 1247, 1263-64, 447 P.3d 994 (2019). Courts may look to the parent's past conduct as an indicator of future behavior. *In re M.S.*, 56 Kan. App. 2d at 1264.

The appellate court must be convinced, after reviewing all the evidence in the light most favorable to the prevailing party, the district court's fact-findings are highly probable, i.e., supported by clear and convincing evidence. Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020).

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights . . . is in the best interests of the child." K.S.A. 38-

2269(g)(1). In making such a decision, the district court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 38-2269(g)(1).

While the district court's unfitness finding must be supported by clear and convincing evidence, the best-interests determination is made on a preponderance of the evidence. "This is because the analysis of a parent's unfitness determines the constitutional question of whether a parent's rights can be terminated, and the analysis of the child's best interests determines whether a parent's rights should be terminated." *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021). The appellate courts review the best-interests determination for abuse of discretion because the district court is in a better position to view the complexities of the situation. The district court abuses its discretion if no reasonable person would agree with the court, or the court made a factual or legal error. 61 Kan. App. 2d at 330.

*Findings of unfitness under K.S.A. 38-2269(b)(7) and 38-2269(c)(3)*

In the same section of his brief, Father contends he was not unfit due to failure of reasonable efforts by the agency to rehabilitate the family (K.S.A. 38-2269[b][7]) or failure of a reasonable plan directed toward integration of the child into the parental home (K.S.A. 38-2269[c][3]) because the efforts made by Saint Francis Ministries were unreasonable. Father argues that he tried to contact Saint Francis Ministries several times and received no response, Saint Francis Ministries never responded about a walk-through of his apartment, and Saint Francis Ministries was not flexible in facilitating visitations at a time that worked for him.

K.S.A. 38-2269(b)(7) requires reasonable, not effective, efforts by the agency to rehabilitate the family. The reasonable efforts requirement provides the parent a chance to succeed, but the parent must exert some effort. *In re M.S.*, 56 Kan. App. 2d at 1257. The evidence at trial supported the district court's finding that the agency's reasonable

efforts failed and were unlikely to be successful in the foreseeable future. Saint Francis Ministries made reasonable efforts to communicate with Father beginning while Father was still incarcerated, but Father did not respond.

Saint Francis Ministries made reasonable efforts to do a walk-through of Father's residence. Father lived with his sister from February 2023 to May 2023. Saint Francis Ministries wanted to do a walk-through of that home, but Father told them no because he was getting his own apartment. Father moved into his own apartment with another sister and his nephew in May 2023. Father testified Saint Francis Ministries did not do a walk-through of that apartment because of a "miscommunication on both sides." Russell testified she did not know Father had moved into his own apartment. In August 2023, Father said he was living with his sister in an apartment. He did not specify it was a different sister or that it was his apartment. Saint Francis Ministries scheduled a walk-through for September 1, but Father canceled it because he had jobs that were planning to call him that day and he did not want to miss the call.

Saint Francis Ministries made reasonable efforts to facilitate visits that worked with Father's schedule. Father testified Saint Francis Ministries only offered times that conflicted with his work schedule. But Stevie Ligali, the family support worker, testified she offered alternative times and offered to do visits during Father's lunch break and close to his workplace, but Father never responded to those suggestions. Once Ligali scheduled a visit on the weekend on her day off and Father did not show. Ligali testified that she even gave Father a ride to visits when he asked.

Ligali made extraordinary efforts to support Father during his visits with A.B. She gave Father a diaper bag with diapers, wipes, the name of the formula A.B. was taking, A.B.'s clothing and diaper sizes, and a sticky note with ideas of things to bring to visits. Ligali testified she does not usually put a bag together for parents like that but she was trying to help Father out. Father was not bringing any supplies to visits. Ligali made

suggestions on what Father could do with A.B. during visits, but he did not take her advice. Ligali could not think of anything else she could to do to help Father become more engaged or involved during visits—"I feel like I helped him a lot and he didn't accept it." The record shows the district court's findings of unfitness under K.S.A. 38-2269(b)(7) and 38-2269(c)(3) were supported by clear and convincing evidence.

*Finding of unfitness under K.S.A. 38-2269(b)(8)*

Father contends he was not unfit due to a lack of effort to adjust his circumstances, conduct or conditions to meet the needs of his child (K.S.A. 38-2269[b][8]). Father argues he completed all UAs, developed his parenting skills, obtained an apartment, obtained some essentials for A.B., was employed, and completed classes.

The evidence supports the district court's finding that Father did not exert sufficient effort to adjust his circumstances, conduct, or conditions to meet the needs of his child and this unfitness was unlikely to change in the foreseeable future. Father did complete a budget class, nutrition class, parenting class, mental health evaluation, and substance abuse evaluation. Yet he failed in several key areas.

Father's use of opiates was concerning to Saint Francis Ministries. Russell did not believe Father could actively take care of A.B. while on the narcotics he was taking. He was supposed to ask for nonnarcotic medication. The district court found Father's testimony about his opiates use was not credible. Father testified his prescription was being held by staff at the work release facility, which was not true. We do not reassess questions of credibility. See *In re Adoption of Baby Girl G.*, 311 Kan. at 806. Moreover, Father's failure to turn over his medication to his ISO was a probation violation.

Father did not have suitable housing for A.B. Father testified he had diapers, bottles, and clothes for A.B. at his apartment. But Father testified he did not have the

9

money to pay the rent to keep his apartment and he had not spoken to his landlord about keeping the apartment since he had been incarcerated. Father would be in the residential correctional program for 120 days minimum, and A.B. would not be able to live with him at the residential facility.

Father had not maintained stable employment. Father had just started working part-time at Church's Chicken. Before that, he had gone to three different temporary jobs since February 2023.

Both Ligali and Russell were concerned with Father's inability to care for A.B. Ligali testified Father did not interact with A.B. like he should. Sometimes he put her straight to sleep. Ligali testified she made suggestions on what Father could do with A.B., but he did not take her advice. Father did not bring any supplies to visits. Ligali could not think of anything else she could to do to help Father become more engaged or involved during visits. During one of the visits, Father climbed in the front passenger side of a vehicle with A.B. on his lap rather than putting her in a car seat. Russell testified she would need to see six months of stability in housing, employment, and ability to care for A.B. before integrating A.B. with Father. He had not shown stability. A.B. had a right to permanency within a time frame reasonable to her. See *In re M.S.*, 56 Kan. App. 2d at 1263-64. The record shows the district court's finding of unfitness under K.S.A. 38-2269(b)(8) was supported by clear and convincing evidence.

*Finding of unfitness under K.S.A. 38-2269(c)(2)*

Father contends he was not unfit due to failure to maintain regular visitation, contact or communication with his child or the custodian of his child. (K.S.A. 38-2269[c][2]). He argues he visited A.B. 14 times, had tried to get visits rescheduled, and maintained consistent communication with his care team.

The evidence supports the district court's finding that Father failed to maintain regular visitation, contact, or communication with his child and the unfitness was unlikely to change in the foreseeable future. Father missed more visits than he attended. Father had a chance to make up a missed visit in May with a two-hour visit, but he arrived an hour late. Father never responded to Saint Francis Ministries' suggestions for alternative times that would better work for his work schedule. He did not know how to manage A.B. and was showing no improvement. The district court may look to past conduct as an indicator of future behavior. See *In re M.S.*, 56 Kan. App. 2d at 1264. The record shows the district court's finding of unfitness under K.S.A. 38-2269(c)(2) was supported by clear and convincing evidence.

*Best interests of the child*

Father contends termination of his parental rights was not in A.B.'s best interests because he and A.B. were bonded. In making the best interests determination, "'the court must consider the nature and strength of the relationships between children and parent and the trauma that may be caused to the children by termination, weighing these considerations against a further delay in permanency for the children.' [Citation omitted.]" *In re T.H.*, 60 Kan. App. 2d 536, 556, 494 P.3d 851 (2021).

A reasonable person could agree with the district court's determination that termination of Father's parental rights was in A.B.'s best interests. Ligali testified she had not seen a bond between Father and A.B. Russell testified it was in A.B.'s best interests to gain permanency through adoption. A.B.'s placement was an adoptive resource. She had lived with them her entire life.

Affirmed.