NOT DESIGNATED FOR PUBLICATION

No. 127,899

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of K.H. and Q.H., Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; RICHARD A. MACIAS, judge. Submitted without oral argument. Opinion filed December 13, 2024. Affirmed.

*Kaitlin M. Dixon*, of Wichita, for appellant natural father.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before MALONE, P.J., BRUNS and CLINE, JJ.

PER CURIAM: Father appeals the district court's finding of unfitness and termination of his parental rights to his two minor children. On appeal, he contends that the State did not meet its burden to establish by clear and convincing evidence his unfitness or that he would remain unfit for the foreseeable future. He also contends that the State failed to establish that the termination of his parental rights is in the best interests of the children or that their physical, mental, or emotional needs would best be served by the termination. Based on our review of the record on appeal, we find that the district court's decision to terminate Father's parental rights was based on clear and convincing evidence. Likewise, we find that the district court did not abuse its discretion in finding that the termination is in the best interests of the children. Thus, we affirm.

1

In December 2022, the State filed a child in need of care (CINC) petition related to K.H. (born in 2014) and Q.H. (born in 2017) two days after they had been placed in protective custody based on allegations of sexual abuse, being left without supervision, and alleged drug use by Mother. At the time, the children were living with Mother, her adult son, as well as several other adults and children. Father was living in Spokane, Washington, and nothing in the record reveals what contact—if any—he had with his children. In fact, one or both children referred to another man as their father.

At the temporary custody hearing, Father appeared via Zoom and his court-appointed attorney appeared in person. After Father waived his right to an evidentiary hearing on the issue of temporary custody, the district court found the allegations that led to the removal of the children from Mother's home were supported by probable cause. As a result, the district court ordered that the children be placed in the custody of the Kansas Department for Children and Families (DCF) and authorized out-of-home placement.

Later, the district court held an adjudication hearing in which Father appeared through counsel. At the hearing, Mother submitted a no-contest statement stipulating to the allegations in the State's CINC petition. As a result, the district court adjudicated the children as being in need of care and ordered that the children remain in DCF custody.

In September 2023, the district court held a permanency hearing at which it found reintegration was no longer a viable option. Later, the State filed a motion for finding of unfitness and termination of parental rights. As to Father, the States' motion alleged that he was unfit under K.S.A. 38-2269(b)(7), (b)(8), (c)(2), and (c)(3).

A few days after the State filed its motion, the district court held a review hearing at which Father participated via Zoom. At the hearing, the district court set a date for an

evidentiary hearing on the termination motion and ordered the parties to appear without the need for further notice. Even so, the State sent a notice of termination hearing to Father in Washington both by regular mail and by certified mail presumably at the address Father provided at the previous hearing. The notice was accepted and signed for by someone at that address, but evidently not by Father.

Unfortunately, neither Mother nor Father appeared at the termination hearing. Although Father's counsel was present, he stated that he had had no recent contact with Father. Father's counsel also stated that he had no concern about the adequacy of the notice of the termination hearing provided to Father. The district court found Father had been provided with adequate notice of the termination hearing and proceeded to consider the evidence the State presented.

The State introduced 16 exhibits that were admitted into evidence. These exhibits included—among other things—six reports submitted to the district court by the permanency specialist from Saint Francis Ministries who had been assigned to the case to work with the family. The exhibits also included reports prepared by the children's therapist. We note that Father's attorney did not call any witnesses or offer any evidence at the termination hearing.

At the conclusion of the hearing, the district court determined that the State had introduced clear and convincing evidence that both Mother and Father are "unfit by reason of conduct or condition which renders [them] unable to care properly for children and the conduct or condition is unlikely to change in the foreseeable future." The district court also found that the "termination of parental rights is in the best interests of the children . . . and the physical, mental or emotional needs of the children would best be served by termination of parental rights." The district court added that it had reviewed the evidence "in child time, as set forth in *In re C.C.*, 29 Kan. App. 2d 950, 34 P.3d 462 (2001)." Thereafter, Father appealed.

3

ANALYSIS

*Issues Presented*

In this appeal, Father asserts two issues. First, he contends that the district court erred in terminating his parental rights. In support of this contention, Father argues that the State failed to establish by clear and convincing evidence that he was unfit or that his unfitness would continue for the foreseeable future. Second, he contends that the district court erred in finding that the termination of his parental rights is in the best interest of the children. In support of this contention, Father argues that the district court abused its discretion in determining that the physical, mental, or emotional needs of the children support termination.

*Standard of Review*

A parent has a fundamental constitutional right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). As a result, parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014). Specifically, under K.S.A. 38-2269(a), the district court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition," making him or her incapable to properly care for the child.

In other words, clear and convincing evidence is what is sufficient to establish the truth of the facts asserted is highly probable and is an intermediate standard of review between a preponderance of the evidence standard and a beyond a reasonable doubt standard. *In re Adoption of C.L.*, 308 Kan. 1268, 1278, 427 P.3d 951 (2018). In reviewing a district court's termination of parental rights, we review the evidence in the light most

favorable to the prevailing party—in this case the State—to determine whether a rational finder of fact could have found it highly probable, i.e. by clear and convincing evidence, that parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). Likewise, we are not to "weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

*Finding of Unfitness*

K.S.A. 38-2269(b)-(e) lists nonexclusive factors that a district court may rely on to determine a parent is unfit. Any one of these factors alone may be grounds to terminate parental rights. K.S.A. 38-2269(f). Here, the State based its motion to terminate Father's parental rights on the following statutory factors:

- K.S.A. 38-2269(b)(7)—"failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family";
- K.S.A. 38-2269(b)(8)—"lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child";
- K.S.A. 38-2269(c)(2)—"failure to maintain regular visitation, contact or communication with the child or with the custodian of the child"; and
- K.S.A. 38-2269(c)(3)—"failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home."

Father suggests that Saint Francis Ministries—the agency that provided case management services for this family—had "an elevated responsibility to accommodate his situation" because he lived in a different state than the children. "'The purpose of the reasonable efforts requirement is to provide a parent the opportunity to succeed, but to do so the parent must exert some effort.'" *In re M.S.*, 56 Kan. App. 2d 1247, 1257, 447 P.3d 994 (2019). "Agencies must expend reasonable efforts toward reintegration but need not make 'a herculean effort to lead the parent through the responsibilities of the reintegration

5

plan.'" *In re H.M.*, No. 124,961, 2022 WL 12121175, at *6 (Kan. App. 2022) (unpublished opinion).

Here, we find that both DCF and Saint Francis Ministries took reasonable efforts to involve Father in reintegration efforts, but Father failed to avail himself to the opportunities presented to establish a relationship with his children. These steps included assigning a permanency specialist to work with the family, who reported frequently to the district court on the progress—or lack thereof—displayed by the parents. In particular, the record shows that both DCF and Saint Francis Ministries made multiple attempts to locate and engage Father in rehabilitation efforts even though he lived out of state and failed to keep the agencies updated regarding his address.

Based on the reports prepared by the permanency specialist that were admitted into evidence at the termination hearing, it was apparent that the team at Saint Francis Ministries had contacted Father and continued to attempt to contact him on multiple occasions. At one point, Father was living in Wyoming and had indicated that he had no intention of returning to Wichita. A few months later, Father was back in Washington and the case team made several more attempts to involve him in the reintegration process.

The reports also noted that DCF attempted to contact Father by phone and by text even before the CINC petition was filed. But Father did not respond to the messages. At one time, DCF located Father's sister, who was advised of the situation involving the children. She said that she lived with Father and exchanged contact information with the DCF social worker. She was also notified about the temporary custody hearing and—as reflected above—Father participated in that hearing via Zoom.

In February 2023, the Saint Francis Ministries permanency specialist reported to the court about recent contact with Father who had conveyed an interest in complying with the orders of the court. Yet in a report submitted in May 2023, the permanency

specialist noted Father had not participated in the case management process and that his whereabouts were unknown. Nothing in the record suggests that during this period Father attempted to contact Saint Francis Ministries to check on the status of the children, to ask about visitation, or to inquire about his case plan tasks.

In January 2024, the permanency specialist submitted two reports regarding the status of this case. In those reports, the permanency specialist noted that Father had moved back to Washington but had not been in contact with the case team since his last court appearance. She also confirmed that Father had not completed any of the orders issued by the district court. Although the permanency specialist indicated that she was available to meet with the parents monthly, the parents had failed to take advantage of her services.

Significantly, Father participated in the review hearing via Zoom on October 20, 2023. During the hearing, the district court set the termination hearing for February 12, 2024, and ordered the parties to appear without further notice. Yet Father failed to participate—either in person or via Zoom—in the termination hearing. Even though his court-appointed attorney appeared at the hearing, he advised the district court that Father had failed to contact him after the review hearing even though Father knew that the termination hearing had been set.

As noted above, neither DCF nor Saint Francis Ministries were required to make "'a herculean effort'" to make sure that Father carried out his responsibilities. See *In re H.M.*, 2022 WL 12121175, at *6. Contrary to Father's assertions, the record reflects the agencies attempted to facilitate communication and involve Father in the case on multiple occasions. Still, Father failed to take advantage of these opportunities. Rather than taking responsibility, Father attempts to shift the blame to those who tried to help his family. At the termination hearing, the State pointed out that, at the review hearing held in October, Saint Francis Ministries had "provided [Father] with all of their information so he could

contact them, and he has never reached out to them . . . ." Consequently, we find that there is clear and convincing evidence in the record to establish Father's failure to participate in the reasonable efforts taken by DCF and Saint Francis Ministries to attempt to rehabilitate the family.

Father again attempts to shift responsibility for his lack of action to DCF and Saint Francis Ministries by arguing that he was not given opportunities to visit the children by phone, video, or otherwise. It is difficult to envision what type of visitation may have been appropriate in light of Father's lack of a prior relationship with one or both children. Still, as discussed above, the record reflects that Father was provided with contact information by the agencies but failed to take advantages of the services they offered.

When viewed in the light most favorable to the State, there was clear and convincing evidence presented to the district court that Father failed to maintain contact with the children or with those who offered to provide services to him. The record shows that the primary problem was Father's failure to make or maintain contact with Saint Francis Ministries or to otherwise engage in reintegration efforts. The record does not reflect Father ever traveled to Kansas to see his children. In fact, one of the reports submitted by the permanency specialist—which was admitted into evidence at the termination hearing—states that Father "has no intention of returning to Wichita, or in parenting his boys."

It is also significant that K.H. stated he does not see Father and even identified another man as his father. This suggests that Father had little to no contact with the children. Furthermore, the reports Saint Francis Ministries submitted to the district court do not reflect that Father attempted to visit the children—remotely or otherwise—and never checked on the status of the children's welfare. Likewise, the record reflects that neither Father nor Mother visited the children after July 2023. At the very least, it is clear

8

from the record that Father did not have any contact with the children from the time they were taken into protective custody to the date of the termination hearing.

*Foreseeability of Unfitness*

Because we find the district court's finding of unfitness is supported by clear and convincing evidence, we next must determine whether the district court properly found that Father's unfitness is unlikely to change in the foreseeable future. See K.S.A. 38-2269(a). We view the question of foreseeability of parents changing the conditions or conduct rendering them unfit through the child's perception of time.

As the district court recognized, the "time perception of a child differs from that of an adult." *In re M.B.*, 39 Kan. App. 2d 31, Syl. ¶ 9, 176 P.3d 977 (2008); see also *In re M.S.*, 56 Kan. App. 2d at 1263 ("[C]hildren experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition."). That is, the child's time away from the parent seems longer to the child than the parent and the State has an interest in promptly disposing "of all proceedings under [the Revised Kansas Code for Care of Children] without unnecessary delay." See K.S.A. 38-2201(b)(4). Although a parent with unlimited time and opportunities might be able to adjust their circumstances to appropriately care for their child, the court cannot extend unlimited opportunities while the child waits for such an adjustment.

Again, the evidence presented to the district court at the termination hearing showed that Father was aware of the court proceedings and knew how to contact Saint Francis Ministries. He also knew when the termination hearing would be held. Yet, even with this information, Father took no action to establish a relationship with the children or even to take advantage of the services offered to rehabilitate the family. Based on Father's past history as well as his lack of action in this case, it was reasonable for the

9

district court to conclude that there was clear and convincing evidence that Father's unfitness would not change in the foreseeable future—especially when we review the record in light of the children's perception of time.

*Best Interests of Children*

Finally, Father contends that the district court erred in finding that the termination of his parental rights is in the best interests of the children. Upon making a finding of unfitness, a district court must then "consider whether termination of parental rights . . . is in the best interests of the child. In making the determination, the court shall give primary consideration to the physical, mental and emotion health of the child." K.S.A. 38-2269(g)(1). We review a district court's best-interests determination for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d at 1116.

A district court abuses its discretion

"when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them . . . . [Citation omitted.]" 50 Kan. App. 2d at 1116.

The party asserting the district court abused its discretion—in this case Father—bears the burden of showing such abuse of discretion. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

Father argues that he was "deprived of the opportunity to establish and maintain contact with his children." He also argues the State failed to show that the children's physical, mental, and emotional needs support termination of his parental rights. Once again, Father fails to take responsibility for his lack of effort and fails to acknowledge the

services offered to him throughout the course of this action. It was also his choice to only participate in two hearings, to make no attempts to establish contact with the children during the pendency of this case, to fail to complete the tasks required by the court, and to not appear at the termination hearing.

Father fails to acknowledge that he did not have a relationship with the children even before the children were taken into protective custody. As stated above, one of the children identified another man as his father. In fact, we find nothing in the record to suggest that Father has ever done anything to meet the children's physical, mental, or emotional needs.

The children's therapist explained that K.H. "has formed a stable, healthy connection with his foster placement and disruption of that would cause further emotional turmoil." Similarly, the therapist noted that Q.H. "has completely adapted into living in the healthy, stable environment that he has been placed in." The therapist also opined that disruption to the structure and routine provided by Q.H.'s foster placement could lead to a regression in his progress and "would be concerning for his physical and mental health."

Under the circumstances presented, we do not find that the district court abused its discretion in finding that the termination of Father's parental rights was in the children's best interests. Moreover, there is substantial competent evidence in the record to support the conclusion that the children's physical, mental, and emotional needs would best be met by termination of Father's parental rights.

Affirmed.