NOT DESIGNATED FOR PUBLICATION

No. 128,712

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of T.W.,
a Minor Child.

MEMORANDUM OPINION

Appeal from Crawford District Court; M. JENNIFER BRUNETTI, judge. Submitted without oral argument. Opinion filed September 5, 2025. Affirmed.

*Autumn A. Green*, of Wallace Saunders, Chartered, of Overland Park, for appellant natural mother.

*Reina Probert*, county attorney, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

PER CURIAM:  Mother appeals the termination of her parental rights to her minor child, T.W. (born in 2022). On appeal, Mother argues the State failed to prove that the presumptions of unfitness in K.S.A. 38-2271(a) applied by clear and convincing evidence and the district court erred by finding she failed to rebut those presumptions by a preponderance of the evidence. But the district court also made findings of unfitness under K.S.A 38-2269(b)(3), (b)(7), (b)(8), (b)(9), (c)(2), (c)(3), and (c)(4), which Mother does not address. After a thorough review, we find clear and convincing evidence supports the district court's findings under these statutory presumptions. Therefore, we affirm.

1

Mother had a history of her children being removed from her custody. After the State had removed at least two other children from her custody, on July 5, 2022, the State moved to declare T.W. a child in need of care. Days earlier, Mother had tested positive for methamphetamine while she was at the hospital giving birth to T.W. Father had threatened employees from the Department for Children and Families (DCF) and employees of TFI Family Services (TFI), the agency managing the case, so the child was not placed with the Father. Due to concerns for T.W.'s safety and well-being, the child was placed in out-of-home placement. On November 7, 2022, the district court adjudicated T.W. a child in need of care.

On July 8, 2024, the State moved to terminate both Mother's and Father's parental rights. In addition to numerous statutory factors under K.S.A. 38-2269, the State asked the court to apply four presumptions of unfitness under K.S.A. 38-2271(a).

A half-day termination of parental rights hearing began on September 30, 2024. Dawnelle Shelley, a permanency manager at TFI, testified she was the case manager from July 2022 until October 2023 and from July 2024 until the termination hearing. She testified Mother's case plan tasks were to "submit to random [drug tests] weekly," to "complete 30 hours of parenting classes," and to complete both mental health and substance abuse evaluations and follow the recommendations of the evaluations. Shelley testified that Mother had completed one or two two-hour parenting classes and provided documentation that she had completed the parenting classes.

Shelley also testified Mother's visitation was still supervised at the time of the termination of parental rights hearing. At one point Mother was able to achieve unsupervised visits with T.W. but, after "some back sliding and not providing [drug tests]" or contacting TFI, Mother's visitation returned to supervised. At the conclusion of

Shelley's testimony, the district court continued the hearing to November 19, 2024, due to time constraints.

At the beginning of the November 19, 2024 hearing, Father voluntarily relinquished his parental rights. Following Father's relinquishment, Mother testified that T.W. was born on June 30, 2022, and was taken from Mother's care very soon after. She testified that, in the last two-and-a-half years, she had not had a home of her own. At the time, she was staying in an Oxford House in Salina, Kansas. She admitted TFI had told her that an Oxford House was not an ideal place for a two-year-old child.

Due to Mother's move to Salina, her visits with T.W. had been conducted over Zoom. She did not dispute that she had missed a total of 27 visits with her daughter and admitted she missed a visit between September 30, 2024, and November 19, 2024, because she was cleaning her duplex.

On cross-examination, Mother testified the Oxford House was an all-female facility and allowed children. Mother testified she passed every drug test from July 8, 2022, to June 26, 2023, and she completed a mental health evaluation and completed counseling before June 26, 2023. Similarly, she completed a drug and alcohol evaluation and completed treatment prior to June 26, 2023. Mother testified Father was a "trigger" for her—someone who could convince her to do drugs—which is why she moved four-and-a-half hours away to Salina in June 2024.

Mother testified she had been sober since April 27, 2024; had completed a mental health evaluation again in Salina; and had completed all the required counseling sessions. She also completed a second drug and alcohol evaluation in Salina. Mother testified she had completed 45.8 hours of parenting classes. Mother also acknowledged she did not take all the drug tests that had been asked of her.

Shawnette Bell, a permanency support worker at TFI, testified she had supervised T.W.'s case since July 2022. T.W. had never been in a parental home and Mother's visits with T.W. were still supervised. Mother admitted to using methamphetamine, fentanyl, and THC, and there was a period when Mother failed to take drug tests. Mother was advised she needed to complete 30 hours of parenting classes, and TFI staff reminded her monthly about the need to complete this requirement. Nonetheless, as of September 30, 2024, Mother had only completed three parenting classes—six total hours.

Bell testified Mother provided a drug and alcohol intake in 2022 but did not complete treatment. Mother did not provide TFI copies of either her April 2024 or July 2024 drug and alcohol intake. Mother completed her treatment, but proof of completion was not provided until November 17, 2024. Similarly, Mother initially did a mental health intake but did not provide documentation showing she completed treatment until November 17, 2024.

Bell reiterated that Mother's visitation with T.W. occurred by Zoom and that Mother had missed approximately half of her visits since moving to Salina. Prior to September 2024, Mother had not carried out all her case plan tasks and had not shown an ability to be consistent in carrying out those tasks.

On cross-examination, Bell acknowledged that Mother had completed all of her case plan tasks as of November 19, 2024. But while Mother successfully completed 16 negative drug tests after June 14, 2024, there was an eight-month gap between August 2023 and May 2024 where Mother did not provide any drug tests. Mother disclosed she was using methamphetamines and fentanyl during this time period. In the last 30 days, Mother completed 24 hours of parenting classes.

After the State rested, Whitney McCosh, a licensed addictions counselor with CKF Addiction Treatment, testified that Mother completed a drug and alcohol evaluation

on July 29, 2024. Krystal Foster, a peer mentor at CKF Addiction Treatment, testified Mother successfully completed level one outpatient treatment—which was recommended by her evaluation—on October 11, 2024. Samantha Carr, a licensed professional mental health counselor, testified she conducted a mental health evaluation and Mother had successfully completed her treatment plan. There was also testimony that Mother had recently started employment.

Theresa Grass, an addictions and behavioral health counselor, testified Mother completed a drug and alcohol assessment in July 2022 and completed her treatment plan in June 2023. But Grass also acknowledged Mother relapsed and was still using drugs on a daily basis in December 2023.

Due to a scheduling conflict, the district court continued the hearing to November 22, 2024, for closing arguments. When the hearing resumed on November 22, 2024, the district court found the presumptions in K.S.A. 38-2271(a)(5), (a)(6), and (a)(13) applied. After argument, the district court took the matter under advisement.

On December 3, 2024, the district court entered an order terminating Mother's parental rights. It found Mother was unfit based on K.S.A. 38-2269(b)(3), (b)(7), (b)(8), and (b)(9). In addition, the district court found Mother was unfit under K.S.A. 38-2269(c)(2), (c)(3), and (c)(4). Finally, the district court found three of the four unfitness presumptions requested by the State—K.S.A. 38-2271(a)(5), (a)(6), and (a)(13)—applied and Mother failed to rebut the State's presumption. As a result, the district court found it was in T.W.'s best interests to terminate Mother's parental rights.

Mother timely appeals.

ANALYSIS

*Mother's Unfitness Was Proven by Clear and Convincing Evidence*

    *Standard of Review*

    "Termination of parental rights will be upheld on appeal if, after reviewing all the evidence in the light most favorable to the prevailing party, the district judge's fact-findings are deemed highly probable, i.e., supported by clear and convincing evidence." *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020). The role of an appellate court does not include weighing conflicting evidence, determining credibility of witnesses, or redetermining questions of fact. 311 Kan. at 806.

    *Discussion*

    The revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., provides that the district court may terminate parental rights when a child has been adjudicated a child in need of care. K.S.A. 38-2269(a). The statute lists nonexclusive factors the court shall consider in making a determination of unfitness. K.S.A. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 38-2269(c). Any one of the factors in K.S.A. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

    In addition, K.S.A. 38-2271(a) provides a list of 13 presumptions "that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child." These presumptions must be shown by clear and convincing evidence. If the State establishes a presumption of unfitness applies, the burden of proof shifts to the parent to rebut the presumption by a preponderance of the evidence. K.S.A. 38-2271(b).

On appeal, Mother contends the State failed to show by clear and convincing evidence that the presumptions in K.S.A. 38-2271(a)(5), (a)(6), and (a)(13) applied. Specifically, she argues the State did not meet its burden to show she substantially neglected or willfully refused to comply with the case plan under K.S.A. 38-2271(a)(5). Mother also asserts the State did not meet its burden in showing that she had failed to carry out the case plan tasks and that there was a substantial probability she would not carry it out in the future. See K.S.A. 38-2271(a)(6). Finally, Mother claims the State failed to meet its burden under K.S.A. 38-2271(a)(13) because she provided sufficient love and affection to T.W.

We do not address Mother's arguments because the district court found clear and convincing evidence that Mother was unfit based on the following statutory factors:

- K.S.A. 38-2269(b)(3)—"the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child";
- K.S.A. 38-2269(b)(7)—"failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family";
- K.S.A. 38-2269(b)(8)—"lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child";
- K.S.A. 38-2269(b)(9)—"the child has been in in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months . . . .";
- K.S.A. 38-2269(c)(2)—"failure to maintain regular visitation, contact or communication with the child or with the custodian of the child";

7

- K.S.A. 38-2269(c)(3)—"failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home"; and

- K.S.A. 38-2269(c)(4)—"failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay."

"The existence of any one of the above factors standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 38-2269(f).

Mother does not address these findings in her brief or her reply brief. An issue not briefed is deemed waived or abandoned. *In re Adoption of Baby Girl G*, 311 Kan. at 803. Further, when an appellant fails to challenge all alternative bases for a district court's ruling on an issue, an appellate court may decline to address the appellant's challenge to the district court's ruling. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 280, 225 P.3d 707 (2010).

Mother failed to take numerous drug tests during the pendency of the child in need of care action, including as recently as a few weeks before the termination of parental rights hearing on September 30, 2024. Mother moved to Salina in June 2024, nearly four-and-a-half hours away from T.W. Despite regularly scheduled Zoom visits, Mother missed approximately half of her visits with T.W. after moving to Salina, including a visit between the September 2024 and November 2024 termination of parental rights hearings. Mother made limited efforts to reunite with T.W. until after the State moved to terminate parental rights, and much of Mother's efforts occurred between September 30, 2024, and November 19, 2024.

We find that clear and convincing evidence supports the district court's statutory findings of unfitness under K.S.A. 38-2269(b) and (c).

*Mother's conduct was unlikely to change in the foreseeable future.*

In a parental termination hearing, once the district court finds a parent unfit, it must determine whether the parent's conduct or condition is unlikely to change in the foreseeable future from the child's perspective of time. *In re D.G.*, 319 Kan. 446, 459, 555 P.3d 719 (2024). "[C]hildren and adults have different perceptions of time; a month or a year can seem considerably longer for a child than for an adult. Children have a right to permanency within a timeframe reasonable to them." *In re K.W.D.*, 321 Kan. ___, 2025 WL 2267906, at *8 (2025).

The State presented evidence to the district court that Mother's conduct was not going to change in the foreseeable future. For example, the State presented evidence that Mother failed to take a drug test as recently as a few weeks before the September 30, 2024 hearing. Nearly two-and-a-half years after T.W. was declared a child in need of care, Mother's visits were still supervised (and conducted over Zoom). Despite this, Mother missed nearly half of her visits after she moved away from T.W. And Mother missed a visit between the termination of parental rights hearing dates. We find there was clear and convincing evidence that Mother's conduct is unlikely to change in the foreseeable future.

*Termination Was in the Child's Best Interests*

*Standard of Review*

We review the best-interests determination for abuse of discretion. The district court abuses its discretion if no reasonable person would agree with the court or the court made a factual or legal error. "While a court's unfitness finding must be supported by clear and convincing evidence, the best-interests determination depends on a

preponderance of the evidence." *In re E.L.*, 61 Kan. App. 2d 311, 330, 502 P.3d 1049 (2021).

*Discussion*

Once a district court makes a finding of unfitness, it must then consider whether termination of parental rights is in the child's best interests. K.S.A. 38-2269(g)(1). In deciding whether termination of parental rights is in the best interests of the child, "the court shall give primary consideration to the physical, mental and emotional health of the child. If the physical, mental or emotional needs of the child would best be served by termination of parental rights, the court shall so order." K.S.A. 38-2269(g)(1). "[T]he formative years for children are brief and if parents cannot or will not make changes in their lives to accommodate the return of their child, the district court will terminate their parental rights if it is in the best interests of their child to do so." *In re D.H.*, 54 Kan. App. 2d 486, 488, 401 P.3d 163 (2017).

In its ruling, the district court considered "child time" and specifically noted how a child experiences "the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts towards a prompt, permanent disposition." See K.S.A. 38-2201(b)(4); *In re M.S.*, 56 Kan. App. 2d 1247, 1263, 447 P.3d 994 (2019). The district court found it would be in T.W.'s best interests to terminate Mother's parental rights. The district court found it of "paramount importance" that T.W. had never been cared for by Mother and was thriving in her out-of-home placement, stating "there has been no testimony as to any relationship or bonding that has occurred during [T.W.]'s life." The court emphasized how it was "constantly confronted" with the State's evidence that Mother "has never had the responsibility or privilege of caring for [T.W.], she has always been in DCF custody. . . . [T.W.] has lived her entire young life with her siblings, in a home provided by grandparents to her sibling."

10

The court specified that it would be in T.W.'s best interests "to continue living with her siblings in the only home she has ever known rather than facing the possibility of existing in limbo and a state of uncertainty or being required to continue to nurse along a zoom relationship with a person she may or may not even know or recognize." Other panels of this court have found that termination of a parent's rights was in the child's best interests where the child had a limited relationship with the parent or favored other out-of-home placement. See *In re R.S.*, 50 Kan. App. 2d 1105, 1117, 336 P.3d 903 (2014); *In re J.L.*, No. 116,293, 2017 WL 1832348, at *6 (Kan. App. 2017) (unpublished opinion); *In re J.A.F.*, No. 113,813, 2015 WL 7192418, at *5 (Kan. App. 2015) (unpublished opinion). Here, T.W. has both a limited relationship with her mother and she is in favored out-of-home placement. Accordingly, we find no abuse of discretion in the district court's finding that termination was in T.W.'s best interests. See *In re E.L.*, 61 Kan. App. 2d at 330.

Affirmed.